UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Gaming Marketing Solutions, Inc. | : |
| Plaintiff, | : **VERIFIED** |
| | : **AMENDED COMPLAINT(KMK):** |
| -against- | : DOCKET NO. 1:07-CV-4624 |
| Kein Cross | : |
| Defendant. | : June 26, 2007 |
| | : |

Plaintiff, Gaming Marketing Solutions, Inc. ("GMS"), by and through its attorneys, Maurer & Associates, PC, does hereby assert and allege for its' amended complaint against the Defendant, Kein Cross as follows:

### Nature of the Action

1. GMS, a marketing company, brings this action against Kein Cross, a merchandiser, for: unjust enrichment; unfair trade practices under the Connecticut Unfair Trade Practices Act; tortious interference with GMS's business relationships with its partner in this venture, Maritz, Inc. and its client Foxwoods Resort Casino through attempted extortion and disparagement causing damage to GMS in: unearned monies paid to Cross; costs to complete Cross's abandoned responsibilities, damage to reputation and legal fees.

### Parties

## Parties

2. GMS is a corporation duly formed under the laws of the State of Illinois having a principal place of business at 505 North Lake Shore Drive, St. 6601, Chicago, Ill. GMS provides merchandise, advertising specialties, promotions and employee recognition programs to the gaming industry.

3. Kein Cross is a merchandiser, having a principal address at 77 Barrow Street #1FW, New York, NY 10014.

## Jurisdiction and Venue

4. Jurisdiction is based on 28 U.S.C.A. § 1332(a) as there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

5. Venue is proper in the Southern District of New York pursuant to 28 U.S.C.A. § 1391 because Defendant resides within its borders.

## Factual Background

6. GMS was founded by James Feldman, a leader in the incentive marketing industry for over thirty years, to provide a variety of marketing and incentive services exclusively to the heavily regulated gaming industry having a particular expertise in the fast growing and highly lucrative Tribal gaming operators.

7. Prior to GMS's relationship with Cross, GMS and James Feldman, enjoyed a sterling reputation in the incentive and Tribal gaming industries, having been repeatedly recognized by trade associations and the leading trade journals while enjoying a flawless reputation with its vendors and customers.

8. The Tribal gaming industry, although large in dollar volume, is very small in number of operators. Every person who works in the industry must be licensed and free of criminal and ethical violations.

9. Additionally, each operator enforces stringent ethical requirements on its employees and vendors. Foxwoods Resort Casino has, and enforces assiduously, the most stringent ethical, conflict of interest, and business practices requirements in the industry and demands the same level of behavior from all of its employees and vendors.

10. An incentive marketing company's reputation in the Tribal gaming industry for ethics and honesty is an asset to be fiercely protected. The industry is small and word travels fast about any company that loses a client under conditions that indicate that the company has not complied with the client's ethical standards.

11. The refusal of one casino to renew or employ a vendor on ethical grounds can lead to the entire industry refusing to do business with that company.

12. On or about April 1, 2007, GMS in conjunction with Maritz Inc., agreed to provide to Foxwoods Resort Casino a completely redesigned and stocked loyalty program for the casino's guests (the, "Foxwoods/ GMS-Maritz Agreement").A copy of the contract is attached as Exhibit "A". The value of the contract to provide this service is well over $20 million in gross sales annually. GMS-Maritz was chosen over multiple other competitors, including the prior vendor based, in part, on its reputation for integrity and creativity.

13. Essential to the Foxwoods/ GMS-Maritz Agreement are the Confidentiality, No Solicitation, and No Kickback provisions at paragraph 15. 23., and 28.; the continuing review of performance at paragraph 16., and the right of Foxwoods to terminate the contract immediately upon material default and/or without cause on ninety days notice at paragraph 17.

14. GMS agreed to have the program completely designed, implemented, and ready to be introduced to the Foxwoods Resort Casino's guests on Memorial Day weekend 2007. To accomplish that project in under two months required GMS to provide: a complete redesign of the space; substantial renovation; and to develop, purchase, ship, receive and merchandise a completely new array of products totally over 3800 items prior to the Grand Opening.

15. GMS contacted Kein Cross to provide creative merchandising services to the project on a very tight schedule. A copy of the relevant e-mails between GMS and Cross is attached as Exhibit "B". Cross provided a proposal which is attached as Exhibit "C" hereto. GMS provided a counter-proposal which incorporated the Scope of Work and final price from Cross's proposal and a number of other provisions including Confidentiality and Trade Secret segments required by the Foxwoods/GMS-Maritz Agreement. A copy of that counter-proposal is attached as Exhibit "D".

16. Cross's proposal required full payment in advance of any work. See Exhibit C, page 1. GMS refused that portion of the proposal immediately and countered with 50% upon purchase order, 50% upon completion. See Exhibit B, pg 11. Cross agreed to the counterproposal including that the first payment was dependent upon receiving the "proposed design concepts." See Exhibit B, pg. 24.

17. GMS paid Cross $7500 in advance as 50% of the fee even though no final contract had been signed.

18. After making trips to Foxwoods Resort Casino and to St. Louis to present plans for the project and to receive the $7500, Cross refused to execute the contract that is a condition precedent to doing any work

as a sub-contractor to GMS on the Foxwoods project. See Exhibit A, paragraph 18c.

19. April 27, 2007 Cross demanded immediate payment of the balance of his fee or he would not complete the merchandising for the Grand Opening. See Exhibit B, pg36.

20. April 29, 2007 Cross continued to withhold Store Concept Plan from GMS and Foxwoods causing GMS to have to delay the meeting with Foxwoods personnel to approve the plans. See Exhibit B, pg 38, 39, 41.

21. April 30, 2007 Cross had not provided the required prop list. See Exhibit B, pg 44.

22. When GMS again refused to pay Cross prior to the completion of the work as stipulated in GMS' counter-proposal, Cross again attempted to hold the completion of the project hostage by refusing to complete the work, to provide any of the completed design elements or to provide the required price lists, prop requirements and staging designs. Exhibit B, pg 46.

23. Even though Cross was repeatedly assured that he would be paid as the parties had agreed, he refused to complete the project, leaving GMS with less than three weeks to design, order, receive and merchandise the entire space. Exhibit B, pg 47, 48, 49.

24. GMS attempted to resolve the issue, including pointing out that the work that had already been paid for was not complete, but Cross refused to reply. Exhibit B, pg 49-55.

25. On May 13, 2007 Cross attempted to extort the $7500 by threatening to send collection letters to GMS's client, Foxwoods and its partner, Maritz Inc. See Exhibit "E".

26. GMS was forced to send GMS executives to live at the project and work around the clock to complete the project in a timely manner at substantial extra expense for overtime work, rush delivery, hotel and meal charges.

27. Due to the urgency of the project, Cross was provided valuable trade secrets by Maritz, Inc., Foxwoods Resort Casino, and GMS regarding future retail design, merchandise, pricing and profitability without signing Foxwoods/ GMS-Maritz Agreement's mandatory non-disclosure and non-compete agreement. Further, Cross has been informed of certain strategic competitive information which would be valuable to any participant in the gaming industry.

28. Since Cross abandoned the project, he has threatened to disparage GMS to its client and venture partner.

29. Cross has said to GMS that his contract requires GMS to pay Cross $15000 before he goes to the site. This is false.

30. Cross has said to GMS that he will tell Foxwoods Resort Casino and Maritz, Inc. that GMS has refused to pay money that GMS owes him. This is false.

31. Cross has said that he will say to Foxwoods Resort Casino and Maritz, Inc. that GMS has not behaved ethically in its dealings with him. This is false.

32. Further, Cross has indicated a willingness to use the competitive information he has to the detriment of GMS. For example, Cross has learned that the client's nearest competitor uses certain design elements in its loyalty program and that the client has decided to use certain superior design elements in the future. If the competitor was informed of these superior design elements with time to respond to these changes, the impact of the Foxwoods/ GMS-Maritz program would be diminished and incremental participation would be lost. This lose of incremental participation could cause the client to cancel the contract, both because of the ethical violation and because of the lack of performance.

33. On May 15, 2007 counsel wrote to Cross ordering him to cease and desist any disparagement of GMS and requesting that he sign the confidentiality agreement that he had declined to execute previously. A copy of that letter is attached as Exhibit "F". Cross telephoned

undersigned counsel's office and left a message saying that he intended to collect the remainder of his fee or he would have his attorney speak with "all of those involved."

34. Based on similar threats made previously in writing to GMS, GMS believes that Cross's intention is to disparage GMS's integrity and honesty to it's client, Foxwoods Resort Casino, and its venture partner, Maritz Inc., in an attempt to either extort additional payments from GMS or to cause Foxwoods Resort Casino not to execute the contract with GMS-Maritz Inc.

### As And For the First Cause of Action
### For Unjust Enrichment

35. The plaintiff reasserts and realleges paragraphs 1-34 as if fully set forth herein.

36. Cross received $7500 as partial payment on a complete re-merchandising project. The $7500 payment was contingent upon Cross producing proposed design concepts for Foxwoods approval. That work was abandoned and never completed.

37. Cross has been unjustly enriched in the amount of $7500 in that it is contrary to equity and good conscience for Cross to retain a benefit that has come to him at the expense of GMS.

### As And For the Second Cause of Action
### For Violation of CUTPA General Statutes § 42-110b (a).

38. The plaintiff reasserts and realleges paragraphs 1-37 as if fully set forth herein.

39. Cross engaged in an unfair or deceptive act or practice in the conduct of trade or commerce and that this caused GMS to sustain an ascertainable loss.

40. Cross's actions were carried out in the course of his trade or commerce in Connecticut.

41. Cross's attempt to extort money from GMS by abandoning the project and threatening to disparage GMS to its client and partner constituted an unfair trade practice because it "offends public policy." The public policy of the State of Connecticut forbids attempted extortion and defamation.

42. Cross's attempt to extort money from GMS by abandoning the project and threatening to disparage GMS to its client and partner constituted an unfair trade practice because it was "immoral, unethical, oppressive or unscrupulous."

43. GMS has sustained an "ascertainable loss."

## As And For the Third Cause of Action
## For an Injunction to Enjoin Cross from Contact
## With Foxwoods and Maritz, Inc.

44. The plaintiff repeats as if fully set forth paragraphs 1- 43 inclusive.

45. Cross knew at the time that he threatened to inform Foxwoods Resorts Casino and Maritz Inc. that he had not been paid in violation of his contract that the statement was false because:

   a. Cross did not have an executed contract,

   b. GMS had not agreed to pay Cross before completion,

   c. GMS had not violated any agreement between them,

   d. Cross had abandoned the work,

   e. Cross had not completed the project, and

   f. the segment of the work that Cross had done was also incomplete.

46. Further, Cross threatened words will defame GMS by implication and innuendo with words that were meant to convey that GMS had behaved wrongfully, dishonestly and unethically when it did not pay him.

47. Unless Cross is enjoined immediately from contact with the Foxwoods Resort Casino's and Maritz Inc.'s staff, he has threatened to convey this defamatory information to them.

48. GMS will be irreparably damaged by Cross' threatened conduct in its reputation for honesty and ethical behavior. If believed by and acted on by Foxwoods Resort Casino and/or Maritz Inc., Cross' defamatory conduct would proximately cause GMS not only to lose the Foxwoods/GMS-Maritz Inc. Agreement but damage its relations with other current and potential clients in the Tribal Gaming Industry.

49. Even though GMS' counsel has written to Cross and demanded that he cease and desist his defamatory conduct, he has informed counsel that he is determined to continue with his threatened conduct.

## Prayer for Relief

**WHEREFORE,** the plaintiff respectfully requests that this Court enter judgment in its favor and against the defendant and grant the following relief:

1. On the First Cause of Action for unjust enrichment; $7500, plus prejudgment interest.

2. On the Second Cause of Action for violation of CUTPA; compensatory, consequential and all other damages directly and proximately caused by the defendant's acts of attempted extortion through defamation and

job abandonment, and treble damages to be determined by the court, plus reasonable attorneys fees, costs and expenses.

3. On the Third Cause of Action, a Permanent Injunction baring defendant from contact with Foxwoods Resort Casino or Maritz Inc. personnel for a period of one year.

### Demand for Jury

The Plaintiff demands a trial by jury.

Dated:  Ridgefield, CT
        June 26, 2007

PLAINTIFF,

Gaming Marketing Solutions, Inc.

By: _____
Elisabeth Seieroe Maurer (esm2215)
Maurer & Associates, PC
Attorney for Plaintiffs
871 Ethan Allen Hwy, Suite 202
Ridgefield, CT 06877
Phone: (203) 438-1388
Fax: (203) 431-0357
emaurer@maurerandassociates.com

## Verification

I, James Feldman, the CSO of GMS, Inc. do hereby verify that the allegations made herein are, to the best of my knowledge, information and belief, formed after inquiry, reasonable under the circumstances, true, have evidentiary support or are likely to have evidentiary support if reasonable opportunity for further investigation or discovery is allowed.

Dated: June 28, 2007

_____
James Feldman

Sworn to and signed by James Feldman, the declarant on this 28 day of June, 2007.

_____
Notary Public
My commission expires on

Commissioner of NY
Superior Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X
GAMING MARKETING SOLUTIONS,              :        07CV4624
                                          :        (AKH)
                  Plaintiff,              :
        -against-                         :
                                          :        JUNE 29, 2007
KEIN CROSS,                               :
                  Defendant.              :
-------------------------------------------------------------------X

## CERTIFICATE OF SERVICE

      I hereby certify that on June 29, 2007, a copy of the foregoing Plaintiff's Verified Amended Complaint with verification of James Feldman J with exhibits was filed electronically and served by mail on anyone unable to accept electronic filing as indicated below. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

_____
Elisabeth Seieroe Maurer