UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **Gaming Marketing Solutions, Inc.** | : | DOCKET NO. 07-cv-4624(SWK) |
| **Plaintiff,** | : | |
| -against- | : | |
| **Kein Cross** | : | |
| Defendant. | : | July 16, 2007 |

### PLAINTIFF'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF IT'S MOTION FOR INJUNCTIVE RELIEF

**I.   Preliminary Statement.**

Plaintiff (hereinafter "GMS"), by and through its attorneys, Maurer & Associates, PC, respectfully submits this Memorandum of Law in Further Support of Its Motion for Preliminary Injunction and a Consolidation of the Hearing with the Trial on the Merits so as to allow an immediate resolution pursuant to Federal Rule of Civil Procedure 65(a).

Defendants Objection to the instant Motion asserts that the plaintiff has failed to meet the $75,000.00 amount in controversy requirement to invoke Federal diversity jurisdiction. Further, defendants argue that the plaintiff has failed to show irreparable harm and therefore is not entitled to injunctive relief.

As set forth herein, the amount in controversy here is sufficient for the following reasons:

1. if the instant injunction is not granted, plaintiff will suffer losses between one and twenty million dollars;

2. the applicable standard for assessing the amount in controversy on a request for injunction is the value of the loss to be suffered by plaintiff if the injunction is <u>not granted</u>; and

    3.    the plaintiff has demonstrated consequential damages in excess of one million dollars due to the unfair trade practices of the defendants.

Further, in accordance with the verified complaint dated May 29, 2007, if the injunctive relief requested is not granted, the plaintiff will suffer irreparable harm for which it has no remedy at law. The harm to be suffered by plaintiff includes the following:

    1.    damage to its reputation in the gaming industry to resulting in the inability of plaintiff to do business in the industry;

    2.    damage in the loss of a contract with Foxwoods Casino worth $60 million over three years which will be irreparable because defendant is incapable of satisfying a judgment in that amount; and

    3.    damage in the loss of protected trade secrets which will cause irreparable harm to plaintiff's business because the damage from such losses is incalculable.

Thus, the only issues at bar are whether the plaintiff has satisfied the amount in controversy requirement and whether the plaintiff has shown that irreparable harm is likely to occur if an injunction is not granted. The plaintiff respectfully submits that it has met both requirements and is therefore entitled to the injunctive relief requested.

## II. Statement of Facts.

The Verified Complaint and in the Amended Verified Complaint, attested by the plaintiff recite the relevant facts in this matter. The following acts are dispositive to the instant motion:

a.    Defendant failed to complete the work contracted for thereby causing the plaintiff to incur over substantial costs to complete the project;

b.    Defendant has threatened disclosure of both trade secrets and false and misleading allegations of unethical behavior on the part of plaintiff which is deliberately calculated to cause irreparable harm to the plaintiffs business interests;

c.    Defendant is now and has been aware of the Independent Visual Merchandising Agreement, dated April 1, 2007 which lays out the nature

| | |
|---|---|
| | of confidentiality and what properties are considered confidential by GMS. The document also sets forth the standards for use of such confidential knowledge and their restrictions. |
| d. | Such need for confidentiality of use of trade secrets and proprietary properties and intangibles is of the utmost necessity in a highly competitive industry such as the gaming industry where knowledge of a trade secret by a competitor would cause irreparable harm to the party from whom the secret has been stolen or misused. |
| e. | Defendant is aware of the agreement between Foxwoods and GMS specifying the highest standards of ethical conduct and providing that immediate cancellation of said contract may occur if said standards are violated. |
| f. | Plaintiff has already incurred operating losses as a result of defendants failure to complete any of the tasks for which the parties contracted; |
| g. | Plaintiff has demonstrated the likelihood of irreparable business losses by providing evidence of its contract with Foxwoods and the provision therein which permits cancellation of the contract for unethical business practices. |

See: Amended Verified Complaint Attached as Exhibit "1".

### III.     Applicable Standard For Granting Injunctive Relief

The defendant misinterprets the standards for granting a preliminary injunction. "To obtain a preliminary injunction, a plaintiff must establish: '(1) the likelihood of irreparable injury *in the absence of such an injunction*, and (2) either (a) likelihood of success on the merits *or* (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly" in its favor. *Federal Express Corp. v. Federal Espresso, Inc.,* 201 F.3d 168, 173 (2d Cir.2000). (emphasis added.) *Malletier v. Burlington Coat Factory Warehouse Corp.* 426 F.3d 532, 537 (C.A.2, 2005).

Defendant claims that plaintiff must show that irreparable harm has already occurred, and that plaintiff must meet a higher standard of *substantial likelihood* of success. In fact, the standard in the Second Circuit is that the plaintiff need only show

that harm is likely to occur if the injunction is denied. *Id.* An illustration of the nature of the standard is found in trademark cases, "In trademark disputes, 'a showing of likelihood of confusion establishes both a likelihood of success on the merits and irreparable harm.' *Hasbro, Inc. v. Lanard Toys, Ltd.*, 858 F.2d 70, 73 (2d Cir.1988) (citation omitted)." *Id.* at 537.

Thus, where the harm is merely shown to be a likely result of the denial of the injunction, the protection should be granted. The plaintiff in the instant matter meets the standard because the underlying contract with Foxwoods contains specific provisions for cancellation for unethical practices.  The harm due to the defamation threatened by defendant is irreparable because it is likely to result in the abrogation of plaintiff's ability to do business.

The *Citibank* case, cited by defendant, provides strong support for the plaintiff's argument. In *Citibank, N.A. v. Citytrust* 756 F.2d 273, 276 (C.A.2 (N.Y.),1985), the Second Circuit held that injunctions are generally granted where speedy action is needed to protect the plaintiff's rights and the fact that a plaintiff moves quickly to protect the rights in issue is a significant indication to the Court that speedy action is in fact necessary. In the instant matter, the plaintiff has moved very rapidly to protect the valuable commercial interests that are imminently threatened by the defendant. "Preliminary injunctions are generally granted under the theory that there is an urgent need for speedy action to protect the plaintiffs' rights." *Citibank, N.A. v. Citytrust* 756 F.2d 273, *276 (C.A.2 (N.Y.), 1985). This fact should weigh heavily in favor of the plaintiff's instant motion.

### IV. <u>Argument</u>

#### A. **Defendant's Choice of Law Argument Is Erroneous.**

Defendant's brief erroneously states that New York law applies to this case as a matter of consent by the parties. [Defendants Brief p.7.] Plaintiff contends to the contrary that Connecticut law is the applicable law in the instant matter. "Under New York's choice of law rules, in deciding contract issues the Court will apply a 'center of gravity' or 'grouping of contacts' approach. See *Brink's Ltd. v. South African Airways*, 93 F.3d 1022, 1030 (2d Cir.1996). 'Under this approach, courts may consider a spectrum of significant contacts, including the place of negotiation and performance, the location of the subject matter, and the domicile or place of business of the contracting parties.'(Citation omitted.)" *Weizmann Institute of Science v. Neschis* 229 F.Supp.2d 234, 249 -250 (S.D.N.Y., 2002).

The four possible bodies of substantive law that may apply in the instant matter are those of Connecticut, New York, Illinois, and the Mashentucket Pequot Tribal Nation. As the Amended Verified Complaint alleges violations of Connecticut's CUTPA statute, Connecticut General Statutes Sec. 42-110b (a), no such consent to the application of New York substantive law exists.

Additionally, the weight of significant jurisdictional contacts is clearly with Connecticut: (1) the site of the project was in Mashentucket Pequot Tribal Nation not New York; (2) the work to be done by defendant Cross was to be performed in Mashentucket Pequot Tribal Nation not New York; (3) the work that was done on the project (although not complete) and the abandonment of the project was in Mashentucket Pequot Tribal Nation, hence the breach of the contract arose in Mashentucket Pequot Tribal Nation; (4) the Mashentucket Nation relies on Connecticut law where their own law has not been developed by statue or case law.

Because the injunction at issue is dependent upon the plaintiff's claims of defamation, the analysis applicable in tort cases should be considered as well. In tort cases, where as in this case the parties are domiciled in different states and the central issue is the standard governing defendant's conduct, the place or location of the tort is determinative. *Weizmann* at 249 –250.

" 'In determining what state's interest to apply when a federal court sits in a diversity action New York's choice of laws applies' in tort cases…New York applies the law of the state with the most significant interest in the litigation.' citing *Lee v. Banker's Trust Co.*, 166 F.3d 540, 545 (2d Cir.1999) (citation omitted).  The purpose of this 'interest analysis' is 'to determine which of the two competing jurisdictions has the greater interest in having its law applied in the litigation' *Padula v. Lilarn Properties Corp.*,84 N.Y. 2d 519, 521." *Id.* Thus, under both tort and contract analysis in New York's choice of law doctrine, Connecticut law should be applied in the instant matter.

### B.  The Court has Jurisdiction to Grant Injunctive Relief Because the Amount in Controversy Exceeds $75,000.00.

Under 28 U.S.C. Section 1332(a), federal jurisdiction will lie, "where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between …citizens of different States." *Id*. In this matter the parties agree that they are of diverse citizenship, but dispute the amount in controversy requirement.

### 1.  The amount in controversy exceeds $75,000.00 because plaintiff sets forth an equitable claim whose value to the plaintiff exceeds $20 million.

The amount in controversy in this matter is in excess of twenty million dollars. Because the failure to obtain an injunction as requested by the plaintiff will result in the imminent loss of plaintiff's contract with Foxwoods Casino valued at $20 million per

year for three years; the plaintiffs have made the requisite showing of jurisdictional amount in controversy.

The defendant correctly cites to *Law Audit Services, Inc. v. Studebaker Technology, Inc.* 1996 WL 137492, 3 (S.D.N.Y.) (S.D.N.Y., 1996) for the proposition that the Court should examine the question of the jurisdictional amount in controversy from the perspective of the plaintiff. [Def.'s Brief P. 3] However, the defendant fails to apply that rule to the instant facts as the *Studebaker* holding requires. In *Studebaker*, the plaintiffs, seeking remand to state court, asserted that their claim for damages was below the required amount in controversy, while defendants sought to invoke Federal diversity jurisdiction by claiming that the amount in dispute was higher. The Court held in favor of the plaintiffs, stating:

> The Eleventh Circuit recently emphasized that in determining whether a defendant has established jurisdiction sufficient to remove a case from state court, the district court must "give great weight to plaintiff's assessment of the value of plaintiff's case." Burns v. Windsor Ins. Co., 31 F.3d 1092, 1094 (11th Cir. 1994); see also 14A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 3702, at 22 (1985) ("Plaintiff is the master of his or her claim; if plaintiff chooses to ask for less than the jurisdictional amount, only the sum actually demanded is in controversy.") In this instance, LAS assessed the value of its claim for recovery for the alleged RDM Conversions injuries at $22,800, rather than the $45,600 which the Defendant claims is in controversy...The Court agrees with the Eleventh Circuit's logic in Burns, accepts LAS' assessment of the case's value and rejects Studebaker's first argument that the amount in controversy has been satisfied.

*Law Audit Services, Inc. v. Studebaker Technology, Inc.* 1996 WL 137492, 3 (S.D.N.Y.) (S.D.N.Y.,1996).

Thus the relevant holding and import of *Studebaker* is that great deference should be given to the plaintiff's valuation of the amount in controversy. The Court further states that, "In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation...(Internal citations omitted) the amount in controversy is not necessarily the

money judgment sought or recovered, but rather the value of the consequences which may result from the litigation." *Studebaker* at 3.

Furthermore, although the burden rests on the party invoking the diversity jurisdiction of the court to show that the requirements have been satisfied, once such a showing has been made, "[I]t must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal." *Chase Manhattan Bank, N.A. v. American Nat'l Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070 (2d Cir.1996) (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288-89, 58 S.Ct. 586, 82 L.Ed. 845 (1938))." *Local 538 United Broth. of Carpenters and Joiners of America v. U.S. Fidelity and Guar. Co.* 154 F.3d 52, 54 (C.A.2 (Vt.),1998).

Additionally, before a Court dismisses a claim for lack of requisite amount in controversy, the party must be given a full opportunity to demonstrate the merits of their jurisdictional claim, "the court must afford the plaintiff an 'appropriate and reasonable opportunity to show good faith in believing that a recovery in excess of [the jurisdictional amount] is reasonably possible.' Arnold v. Troccoli, 344 F.2d 842, 846 (2d Cir.1965). In this matter, the appropriate opportunity would involve the presentation of evidence on the merits. By this standard, the plaintiff has easily met the required jurisdictional showing.

2. **The amount in controversy exceeds $75,000.00 because the sub-contract between the parties is related to and dependent upon the underlying contract between Foxwoods and the plaintiff.**

Because the sub-contract between the instant parties is an integral and inseparable extension of the contract between plaintiff and its client Foxwoods Casino, the two contracts are indivisible and should be reviewed as an organic whole encompassing the relations between the parties. The injunctive relief sought is directly related to the plaintiff's agreement with Foxwoods and the impetus behind every aspect of this

dispute from formation through breach and remedy may be traced back to the Foxwoods casino.

In this matter, the underlying contract between Foxwoods and GMS was for three years for $20 million dollars for the first year continuing on the same terms for a three year period or $60 Million dollars.  The subcontract between Cross and GMS grew out of this original contract and the objection by Cross to the confidentiality agreement grew out of necessity that GMS and its subcontractors agreed to confidentiality vis a vis Foxwoods trade and industry propriety products.  Foxwoods had insisted on GMS signing such a confidentiality agreement when GMS contracted with Foxwoods, and Foxwoods insists on any subcontractor of GMS pursuant to the original contract between GMS and Foxwoods to sign a similar confidentiality agreement also.  This is the common practice in an industry where proprietary information is exceedingly well guarded and protected.

The need for the GMS confidentiality agreement with defendant Cross grew out of an original agreement between GMS and Foxwoods, with Cross providing the much needed design and support to GMS's merchandising and promotion programs at the Foxwoods Casino Complex.  In the gaming industry Foxwoods has a reputation for demanding integrity and honesty in its own dealing, as well as its employees, affiliates, and subcontractors. The contract between Foxwoods and GMS also demanded that GMS satisfy certain and very specific aspects and elements of confidentiality with respect to its (Foxwoods') industry and trade secrets.  Such is the standard in the industry to require a signed confidentiality agreement between contracting partners. In the original agreement, in this instance Foxwoods had insisted that GMS agree to sign such and agreement and agree to its vow of secrecy vis-à-vis its proprietary trade secrets and trade products.

When GMS sought out Cross to perform design elements in the sub contract between GMS and Cross, GMS was only asking for the same legal commitment from Cross to protect Foxwoods that GMS had agreed to in its original contract with Foxwoods. This is a requirement for doing business with Foxwoods. To not agree to sign such a confidentiality statement by Cross puts the relationship between Foxwoods and GMS in jeopardy.

Cross was asked again in an email dated May 7, 2007 from Jennifer Dobbins to Kein Cross. "GMS is under a legal agreement with Foxwoods and Maritz that both require a similar agreement from GMS contractors. In absence of the signed agreement, we cannot move forward. Further, at this point using you without the signed agreement could jeopardize the GMS relationship with Foxwoods and I am confident that neither of us wish that to occur." Here again GMS was asking of Cross the same thing that Foxwoods had asked of GMS. The fact that Cross had refused to sign the confidentiality agreement with GMS has put the GMS/Foxwoods relationship in potential jeopardy. If this contract is revoked the damage to GMS is reasonably estimated at $60 million dollars.

3. **The amount in controversy exceeds $75,000.00 because the plaintiff sets forth a claim for damages in excess of $75,000.00 based on defendant's unfair business practices.**

Plaintiff's Amended Verified Complaint asserts a claim against the defendant for unlawful business practices under the Connecticut Unfair Trade Practices Act (CUTPA) C.G.S.A. § 42-110b *et seq*. In accordance with that statutory cause of action, the plaintiff may be entitled to reasonable attorney's fees as well as punitive damages, both of which are exclusive of costs of litigation. *Charts v. Nationwide Mut. Ins. Co., D.Conn.*2005, 397 F.Supp.2d 357. Further, under CUTPA, damages are recoverable based on estimated future loss of profits. *Id.*, *See*, *Criscuolo v. Shaheen*

(1999) 46 Conn.Supp. 53, (1999), (Actual damages under Unfair Trade Practices Act, are synonymous with compensatory damages and with general damages.)

Where a litigant may be entitled to attorney's fees as a mater of right, such as the aforesaid statutory right under CUTPA, "a reasonable estimate of those fees may be included in determining whether the jurisdictional minimum is satisfied. *Batts Restaurant, Inc. v. Commercial Ins. Co. of Newark*, 406 F.2d 118, 120 (7th Cir.1969). *Ross v. Inter-Ocean Ins. Co.*, 693 F.2d 659, 661 (7th Cir.1982)." *Sarnoff v. American Home Products Corp.* 798 F.2d 1075, 1078 (C.A.7 (Ill.),1986).

Thus, by virtue of the plaintiff's CUTPA claim, the amount in controversy in this action includes reasonable attorney's fees, punitive damages, and consequential damages including but not limited to lost profits that will result if defendant carries out its threatened defamation of the plaintiff. For these reasons, the amount in controversy in this matter far exceeds $75,000.00.

**C.    The Plaintiff Is Entitled To Injunctive Relief Because It Will Suffer Irreparable
       Harm If The Instant Motion Fails.**

As set forth in detail above at Section III of this brief, the standard to be applied to a motion for injunction is that the plaintiff must show the likelihood of irreparable injury *in the absence of the injunction.* The defendants in this matter suggest an absurd Catch-22 whereby the plaintiff seeking the protection injunctive relief was designed to afford must prove that the harm to be avoided has already occurred. This is not the law applicable to this case.

The plaintiff has set forth sufficient facts in its Amended Verified Complaint to clearly establish the likelihood of irreparable harm should the instant motion fail. The harm resulting to the plaintiff's reputation in the gaming industry is likely to be catastrophic and irremediable by monetary compensation.

Thus, in *Sperry Intern. Trade, Inc. v. Government of Israel* 670 F.2d 8, (C.A.N.Y., 1982), the Court held that where the likely financial losses are of such a magnitude that the business' financial solvency might be in jeopardy, the loss is not considered reparable harm and an injunction is warranted. *Sperry Intern. Trade, Inc. v. Government of Israel* 670 F.2d 8, *12 (C.A.N.Y., 1982). This is just the sort of financial jeopardy the defendant has presented to the plaintiff in this case.

In the gaming industry the reputation for honesty and integrity is a firm's most valuable intangible asset. If Foxwoods is informed by Cross of erroneous statements that GMS owes him money and has not paid the result would not only put the Foxwoods/GMS relationship in jeopardy as stated above, but GMS's 30 year reputation for honesty and integrity and for fair business dealings would be put in jeopardy. In a small community of the gaming industry word travels fast and reputations are quickly impacted by negative defamatory remarks so that not only will defendant's written or oral statements affect the relationship GMS has with Foxwoods but also with the entire gaming industry as well as the marketing and promotions industries.

GMS will be irreparably damaged thereby as it will lose the over $1million it has invested in acquiring the client and the project to date as well as the profits from the contract. Further, because the Tribal Gaming Industry is intensely competitive and small in number of operators, information spreads rapidly. Therefore, if Foxwoods Resort Casino or Maritz, Inc pulls out of the planned relationship with GMS because of a perceived "ethical issue", GMS's reputation and ability to maintain current contracts and acquire additional contracts in the industry will be seriously compromised.

Further, because the defendant is incapable of satisfying a judgment in the amount of $20 million dollars, the damage caused by the loss of the instant Foxwoods contract is in fact irreparable.

The defendant inexplicably argues that the plaintiff has already caused itself the very reputation damage it seeks to enjoin by filing suit to seek the present injunction. This is another Catch-22 argument. Although the filings in the instant case are a matter of public record, there is an enormous difference between a public dispute and a direct complaint to Foxwoods and other industry sources by a disgruntled sub-contractor. To credit defendants' argument is to ignore the distinction between a public record and a private allegation of unethical business practices to a client.

Finally, defendant argues that plaintiff has not provided any evidence of its contract with Foxwoods or of the defendant's alleged willingness to reveal proprietary trade secrets. However, through its Amended Verified Complaint and the Exhibits attached thereto, the plaintiff has provided a copy of the relevant contract with Foxwoods as well as the testimony of the plaintiff's CEO who defendant threatened with the revelation of trade secrets and defamatory statements.

"We have noted more than once that '[p]erhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered.' *Bell & Howell: Mamiya Co. v. Masel Supply Co.,* 719 F.2d 42, 45 (2d Cir.1983)." *Borey v. National Union Fire Ins. Co. of Pittsburgh, Pennsylvania* 934 F.2d 30, 34 (C.A.2 (N.Y.), 1991). The plaintiff has shown just that.

    **D.**    **Plaintiff Is Entitled To Injunctive Relief Because It Has Shown Likelihood Of Success On The Merits.**

Defendant in this matter mischaracterizes the plaintiff's burden to demonstrate a likelihood of success on the merits. First, the plaintiff need only demonstrate, "(a) likelihood of success on the merits _or_ (b) sufficiently serious questions going to the merits to make them a fair ground for litigation plus a balance of hardships tipping decidedly in its favor." *Malletier v. Burlington Coat Factory Warehouse Corp.* 426 F.3d 532, 537 (C.A.2, 2005).

The plaintiff need not prove likelihood of success on the merits of a libel per se claim to qualify for injunctive relief here. The Amended Verified Complaint alleges unjust enrichment, violation of CUTPA, and an action for an injunction. Plaintiff has demonstrated evidence of likely success on the merits of all three causes of action. At the very least, it has raised sufficient serious questions going to the merits to make them a fair ground for litigation.

Finally, the equities in this matter weigh clearly on the side of the plaintiff. As stated repeatedly in the record and in the argument above, the plaintiff's right to continue to work in the gaming business is at stake in this motion. The contracts and other documentary and affidavit evidence in this record clearly show a likely loss of reputation, good will, and monetary damages in excess of $20 million dollars. The losses likely to be suffered by the defendant who is not dependant in any way on Foxwoods or the gaming industry for its livelihood is negligible at best.

## V.   **Conclusion**

Because defendant has failed to show to a legal certainty that plaintiff has not met the jurisdictional requirements and because the plaintiff has demonstrated that irreparable harm is likely to result if the instant motion fails, the plaintiff respectfully moves this Court to grant the requested injunction.

Respectfully submitted,

PLAINTIFF,

Gaming Marketing Solutions, Inc.


By:_*Elisabeth Seieroe Maurer*_____
Elisabeth Seieroe Maurer (esm2215)
Maurer & Associates, PC
871 Ethan Allen Hwy, Suite 202, Ridgefield, CT 06877
Phone: (203) 438-1388, Fax: (203) 431-0357
emaurer@maurerandassociates.com